Wilmot, J.,
delivered the opinion of the Court.
The claimants file their petition, averring that they entered into a written contract on the 22d of June, 1863, with Major Du Barry, commissary of subsistence United States army, at Cincinnati, Ohio, to furnish that department nine thousand bnshels of potatoes at eighty-five cents per bushel, at the subsistence storehouse in that city, between the 7th day.of July and the 1st day of August, 1863, in such quantities as might, from time to time, he required, not exceeding three thousand bushels per week. They further aver that they were ready at all times between said days to deliver the potatoes, of the kind and quality required by the contract, of which Du Barry was duly informed, but that he refused to receive any except a small part, whereby eight thousand eight hundred and eight -f jj- bushels were wholly lost; and for this quantity they now seek to recover, at 85 cents per bushel, the sum of seven thousand four hundred^and eighty-seven dollars and forty-one cents. The claimants further set forth in their petition “that Major Du Barry caused certain articles of agreement to he drawn up and sent to them, which they signed without the advice of counsel, not knowing but that said articles fairly stated the actual agreement of the parties ; but that the contract is not truly set forth in said articles of agreement, either fraudulently or by mistake, inasmuch as the quantity of' potatoes contracted for, to wit, nine thousand bushels, is omitted.
*244 We hold that the written contract executed by the parties witnesses truly their agreement; that by it their rights and liberties are fixed, and can alone be adjudged in a court of equity and law. The advertisement of the commissary inviting proposals for the delivery of potatoes, the bid or proposal of the claimants to furnish them, and the acceptance of their bid, all of which are relied upon to change and add to the written contract, so far from affecting it in the least, are consistent and in full accord with it. The advertisement invited proposals for the delivery of potatoes “ in such quantities (not exceeding three thousand bushels per week) and at such times as may be required, during the month of July, 1863.” The claimants by their bid offered for sale “ twelve thousand bushels — three thousand first week in July, three thousand second week, and balance as may be called for — at eighty-five cents per bushel, binding themselves to delivery on or before the 31st of July, in strict compliance with the terms of the advertisementDu Barry gave notice of the acceptance of this bid by letter, as follows : “ Tour bid for potatoes is accepted at eighty-five cents, except for first delivery, which I get for eighty cents;” and asking them for the names and residence of their firm, that he may have a contract drawn and sent them for execution. In reply Clark & Company gave the names and residence (county and State) of their firm, and add “ we understand that we are to furnish nine thousand bushels, or three thousand per week after the first week; if so, all right; we will endeavor to meet it promptly.” To this letter Du Barry made no reply, except to forward the contract for their signatures. Clark & Smith signed it, without modification or change, and returned it after having it in their possession for nearly two weeks. We cannot see in all this the slightest ground for charging either fraud or mistake, in the final consummation of the agreement, in the execution of the written contract. It was, in all respects, such a contract as the commissary proposed to enter into with the successful bidder, and the claimants, when they bid, attached a copy of the advertisement to their proposal, and engaged to make the “ delivery in strict compliance with the advertisement.” After having had the contract in their possession for about two weeks, they signed it, on or about the 7th of July, and returned it to Major Du Barry. It is with a poor grace that they now attack this written contract with the allegation of fraud or mistake.
“ Bonds with two sureties in a penal sum equal to one-third the amount of the contract” were required, and it is contended that no amount could be fixed in which to bind the sureties, unless the con *245 tract be held as one for a definite number of bushels, to wit, for nine thousand. It was certainly proper to look to this amount, in fixing the liability of the sureties, because by the terms of the contract it might reach to that extent. Had Du Barry required nine thousand bushels, the claimants were bound for the delivery, and hence the propriety of binding the sureties in a penal sum equal to one-tliird the value of that amount. It is not perceived how this could control the requirements of Du Barry, and these requirements alone determined whether the contract extended to the sale and delivery of nine thousand bushels, or to a less quantity.
It is clear that the contract did not bind the commissary to receive under it any definite number of bushels; and the claimants were obligated to deliver only so many as were required, keeping themselves prepared at all times, during the continuance of the contract, to deliver the maximum quantity that the commissary could require in any one week. Under the contract the claimants were bound to make prompt delivery of three thousand bushels the second and each succeeding week during the month of July. Being prepared to make the first delivery in the second week of that month, they were prepared to make the second and third deliveries in the third and fourth weeks, by replacing the number of bushels that had been previously delivered, and such as by decay had become unfitted to answer the requirements ■of the contract. Three thousand bushels being the greatest quantity that the commissary could require in any one week, was therefore the maximum it was necessary for the claimants to have on hand at any one time. This quantity, by a fair interpretation of the contract, the claimants were bound to keep ready for delivery, and in case of any deficiency, either in quality or quantity, the commissary was authorized to supply such deficiency by purchase, charging them with the difference in cost between the amount he paid and the contract price. On the lltlf of July the claimants had on hand, for delivery,'three thousand bushels; only 191-LL bushels were required; these were •delivered and accepted. Those not required should have been held, if in good condition, to meet the subsequent requirements of the contract, supplying such deficiency as was necessary to keep good the quantity of three thousand bushels.
. This contract terminated on the 31st of July. At this season of the year and in the climate of Cincinnati, potatoes of the last year’s ■crop were a very perishable commodity, and after the 1st of August, when the new crop began to come into market in abundance, were of little market value. We are satisfied, from the evidence, that the *246 inspector appointed by Da Barry made no proper and fair inspection of tlie article. The United States could not avoid the .responsibilities of the contract, by its agents failing to make inspection, or so inspecting the potatoes as to do a wrong to the contractors. The inspection, ought to he just and reasonable. This we are satisfied it was not. Several respectable produce dealers and commission merchants of Cincinnati, who were called and thoroughly and carefully examined a lot of' fifty barrels about the 1st of August, which Gillette, the government inspector, had rejected, after an inspection which was no test of their quality, testify that the potatoes were sound and merchantable, unusually so for that season of the year, of good quality, and in fair shipping order. We allow the claimants for three thousand bushels at the contract price, eighty-five cents per bushel.
Mr. John Joliff for claimant.
Mr. J. J. Weed, Assistant Solicitor, for the government.
It is considered and adjudged by the court that Jared H. Clark and Carlos A. Smith have and recover of the United States the sum of two thousand five hundred and fifty dollars, and we direct that judgment be entered in their favor for that sum.
Boring and Nott, JJ., did not sit in this case, and took no part in the decision.